Lone Tree Bank, Appellee, v. F. W. Timmerman, Appellant.

**BILLS AND NOTES:** Validity—Execution for Corporate Stock. A
1  promissory note, given for the purchase price of stock in a foreign corporation doing business in this state, is not void because of anything required or commanded by Sec. 1641-b, Code Supp., 1913, nor is such note rendered invalid because the corporation negotiates it at a discount.

**BILLS AND NOTES:** Validity—Avoidance for Fraud. Manifestly,
2  the purchaser of stock in a corporation may not avoid his promissory note given therefor, on a record showing no fraud or effort to cancel his contract.

*Appeal from Muscatine District Court.*—A. P. Barker, Judge.

June 23, 1922.

Action at law, to recover upon two promissory notes. Trial to the court. Judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Robert Brooke* and *E. M. Warner,* for appellant.

*Nichols & Tipton,* for appellee.

WEAVER, J.—The plaintiff sues upon two promissory notes, executed by defendant payable to his own order, and indorsed by him in blank. It is also alleged that the plaintiff is now the owner of said notes, having acquired the same before maturity and in due course of business, without notice of any defense thereto.

The defendant admits making and indorsing the paper, but denies that plaintiff is an innocent holder thereof. He further alleges that the notes were procured from him by fraud by a Delaware corporation, known as the Muscatine Packing Company, acting by its agents and representatives, among whom was an officer and representative of the plaintiff bank. He further alleges, in substance, that the notes represent the price to be paid by him for certain shares of the stock of said corporation, but that such stock was sold in violation of law, and without due authority from the state, as provided by statute; that, with knowledge of this defect in the consideration of the notes, and with knowledge that the shares of stock for which the notes were given had not then been issued, the plaintiff bought said notes immediately after they had been made, paying therefor in Liberty bonds at their face or par value, although such bonds were then worth only about 90 cents on the dollar.

The issues were tried to the court without a jury; and judgment being rendered for plaintiff, defendant appeals.

I.  As will be noted by the preceding statement, the first defense pleaded presents the issue of fraud and false representations in the procurement of the paper sued upon. There was a distinct failure of proof sufficient to sustain a finding for the defendant on this issue. This is conceded in argument by counsel for appellant, who now place their reliance upon the proposition that the corporation is not shown to have authority from the state to sell its stock in Iowa, and that, in any event, the shares so sold are not shown to have been issued in accordance with the provisions and regulations imposed by our statutes.

II.  It is the contention of the appellant that the fact that

the corporation received the defendant's notes for the stock and immediately exchanged them with plaintiff for Liberty bonds at par, when such bonds were worth only 90 per cent of their face, is, in effect, a sale of the shares at a discount, and therefore a violation of the terms of Sections 1641-b and 1641-d, Code Supplement, 1913, which forbid the issuance of corporate shares without payment of the full par value thereof in money, except upon leave so to do, obtained from the state executive council. The objection is not well taken. By its express terms, the statute so relied upon is made applicable only to corporations "organized under the laws of the state of Iowa;" but even if it be thought broad enough to cover the case of a foreign corporation doing business in this state, it cannot be held that the taking of the promissory note of a stock subscriber in payment for his subscription to the corporate shares violates such statutory regulation. This question was before us in *First Nat. Bank v. Fulton,* 156 Iowa 734, and there decided against the appellant's contention. Nor can we see on what sound theory a note which is valid under the doctrine of the *Fulton* case, just cited, can be said to become invalid by the act of the corporation or its agent in negotiating it at a discount.

*1. BILLS AND NOTES: validity: execution for corporate stock.*

III. Some question was raised upon the trial that no proper showing had been made that the packing company had a permit to sell its stock in Iowa, as required by our statute, Section 1920-u, Code Supplemental Supplement, 1915. But the defect, if any, in this respect appears to have been cured by a somewhat belated offer of such permit in evidence by the plaintiff.

Nor do we find anything in the holding of the trial court which runs counter to the rules approved by us in *Farmers & M. State Bank v. Shaffer,* 172 Iowa 173. In that case, there was an express finding that the note originated in fraud,—or at least that the jury could properly so find,—thus casting the burden on the holder of the note to show its validity, as well as the good faith of its ownership of the paper. Failure to prove a permit to deal in the stock is only prima-facie evidence of the void character of the transaction. Here the permit was

produced, and was sufficient to make the plaintiff's prima-facie case. The stock may have been worthless, in the sense that it represented no tangible or actual value in corporate property or assets,—indeed, we may almost take judicial notice that the organization was a speculative bubble, ready to explode into thin air at the first touch of adversity; but that alone constitutes no defense.

IV. It should be noted, also, that in this case there is neither plea nor proof of any effort to rescind the contract of subscription, or of any return or tender of return of the stock.

2. BILLS AND NOTES: validity: avoidance for fraud. Indeed, there is no evidence whatever that the stock is not of material value, or that the corporation is not possessed of assets from which a judgment for damages might be collected. The sole evidence bearing upon this feature of the case is that of the court bailiff at Muscatine, who says he makes daily trips to the courthouse from his residence, passing the grounds of the Muscatine Packing Company, and that nothing is discoverable thereon except an office and cattle sheds,—no corner stone, unless it be in the corner of the office building; and "there is a hole in the ground that indicates where a building was to be erected,"—another melancholy memorial of the truth that "man's inhumanity to man makes countless thousands mourn."

We find nothing in the record upon which to disturb the judgment of the district court, and it is, therefore,—*Affirmed.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.